## ALEXANDER B. DAVIDSON and BEVERLY C. SANDERS, *vs.* WILLIAM KELLY.

The acceptance of a security of a higher dignity, merges and extinguishes the original cause of action. But if one partner, who has executed in the name of the firm, a single bill, for the amount of a debt which the firm owes, afterwards gives a promissory note in the name of the firm, thereupon a recovery may be had thereon against the firm. The partnership debt, which was extinguished by the acceptance of the single bill, is thereby revived.

KELLY, the appellee, and one Donnelly, were partners, doing business in the name of Donnelly. In November 1846, Donnelly having purchased goods of the appellants, the firm, gave his own single bill for the amount, and the same was received by the appellants. Afterwards, and when the single bill was due and unpaid, Donnelly gave two promissory notes for amount of the single bill, and it was delivered up to him. Suit was afterwards instituted against Donnelly and Kelly, as partners, to recover the amount of the goods, purchased as aforesaid; and the declaration was, for goods sold and delivered; and upon an *insimul computassent*. Kelly, alone, was arrested.

It was agreed at the trial, that at the time the notes and single bill were executed, the appellees did not know of the existence of the partnership.

Several prayers were made to the court, and exceptions being taken, they present the following questions:

Did the single bill given by Donnelly for the amount of the goods, and when the creditors were ignorant of the partnership, extinguish the claim against the partnership? If it had such effect, did not the promissory notes executed in the *firm name* bind Kelly?

The case was argued before all the judges.

By *T. J. McKaig* and *Bevans* for appellant, and *Devickman* for the appellee.

*Bevans* for appellant.

The appellees, Kelly and Thomas Donnelly, by the terms of their contract, as proved and set out in the record, were engaged in trade as co-partners, under the name of Thomas Donnelly, it being agreed that Kelly was to be a secret partner, and that his name and interest should be kept concealed. The business was to be, and was conducted, in the name of Thomas Donnelly. Goods were purchased by Donnelly of the appellants, after the commencement of the firm business, for the use and benefit of the firm, and were sold by him for

the joint account.    A bond or single bill was given for them, signed by Thomas Donnelly in his own and the firm name, which was afterwards, and during the continuance of the co-partnership, lifted, and notes signed by Thomas Donnelly, in the firm name, given therefor ; the appellants being still igno-rant of the existence of the co-partnership.    Afterwards the appellants discovering that Kelly was a partner, the goods still remaining unpaid for, brought this suit to recover the price of the goods against Kelly and Donnelly, as partners. Donnelly was returned by the sheriff, *"non est,"* and Kelly alone appeared.    On the trial, the verdict and judgment were against the appellants.    Four exceptions were taken by the appellants at the trial below, but the questions raised may be considered in two propositions, viz :

1st.  Did the single bill, under the circumstances, extinguish the liability of Kelly, on its being discovered that he was a partner ?

2nd.  Were the promissory notes binding on the firm ?

A dormant partner is always liable, on being discovered. *Collyer on Part.*, 212 *and* 213, *note* 62.    *Story on Part.*, *page* 95.    *Reynold vs. Cleaveland*, 4 *Cowen*, 282.    Kelly thus being liable as a dormant partner, on being discovered, the single bill did not, it is contended on the part of the ap-pellants, operate to extinguish that liability, because it was not received in *satisfaction* of the debt; and the appellants were ignorant at the time of receiving it, that he had any in-terest in the business, and were under the impression that Donelly was engaged as a sole trader.    The Maryland cases, *Williams vs. Hogson*, 2 *H. & J.*, 474, *and Moale vs. Hollins*, 11 *Gill and Johns.*, are relied on by the appellee as settling the doctrine of this case.    But in both these cases the respective plaintiffs were informed, before taking the single bill in the one case, and the judgment in the other, that the defend-ants against whom they afterwards proceeded, were, or had been, partners; and they took the single bill in the one case, and the judgment in the other, with full knowledge of the *fact*, that there were other partners liable, not joined in these

securities. As a general rule, the principle appears to be settled in Maryland by these cases, that where a creditor with *full knowledge* of the *facts* material to his rights, and with knowledge of the partners, takes a single bill of one of several partners, or a judgment against one of several, *in satisfaction* of a debt due from the firm, the liability of the other partners is thereby extinguished, and the creditor is considered to have elected to take the partner whose bond or judgment he *thus* receives, as his sole debtor; but the security from the separate partner, in order to have this effect, must be received by the creditor on sufficient consideration, and with the mutual consent of the debtors and creditors, otherwise there is no conversion of the debt from joint to separate, *Story on Part.*, 523 and 524, and therefore no extinguishment. It must also be received *in satisfaction* of the debt, otherwise it only furnishes another remedy to the creditor. *Day and Pentfield vs. Leal and Leal,* 14 *Johns. R.,* 404. If the security of one of several partners be taken for a debt due from the firm, of which he is a member, not *in satisfaction* of the debt, or without consideration, &c., such separate partner assumes a new liability, and makes himself *individually* responsible on his sole undertaking, but he also remains jointly liable with his co-partners on the joint contract. *Story on Part., page* 524. *Collyer on Part., page* 268. *Dudly (S. C.) Reps.,* 363. *Gow on Part.,* 343 *and* 344, *(side-paging,)* citing *ex-parte Brown,* cited 1 *Atk.,* 225. There is nothing in this case to shew that the appellants received the single bill upon any *consideration,* or that it was received *in satisfaction* of the debt. So that even had the appellants known at the time of receiving it, that Kelly was a partner, the principle of conversion and extinguishment would not apply. Donnelly would be liable on the single bill, individually, and both Kelly and Donnelly on the joint contract, jointly. But it is contended that the single bill is a technical extinguishment, because it is a security of a higher nature. It cannot have this effect for this reason, unless it be received *in satisfaction* of the debt. 14 *Johnson,* 404; and

other authorities above cited. The case at bar is distinguishable from the Maryland cases, not only in that the bond cannot be considered to have been received *in satisfaction* of the debt, but also in this, that the appellants were ignorant at the time of receiving it, that Kelly was a partner; and although ignorance of *law* usually furnishes no excuse, ignorance of *fact* is relievable both at law and equity. 2 *Kent*, 491. 6 *Barn. and Cress.*, 671. And this is considered to be a case where *ignorance* of a material *fact* prevents the extinguishment, even were it considered otherwise to take place. This ignorance did not proceed from the negligence of the appellants, but was the result of the concealment practiced on them and others by the partners, who placed it out of the power of the creditors to discover the existence of the firm by the use of ordinary diligence. The case of *Sheehy vs. Mandeville*, 6 *Cranch*, 253, may be regarded as conclusive of this question. Sheehy, the plaintiff, sold goods to Robert B. Jamesson, and took his note for the amount, on which he brought suit, and obtained a judgment against Jamesson. Afterwards supposing Mandeville to be a secret partner, he brought suit against Mandeville and Jamesson, as partners, trading under the firm-name of Robert B. Jameson. Mandeville pleaded the judgment obtained against Jamesson, in bar of this second suit. The plaintiff demurred, and the *Supreme Court of the United States* gave judgment for the plaintiff, being of opinion that the *several* suit and *judgment* against Jamesson, was no bar to a *joint* action against both Mandeville and Jamesson. If a *judgment* be not a technical release or extinguishment, surely a *single bill* cannot, on the ground of being a *higher security* than a simple contract. Those acts done by a creditor, which are usually held to operate the discharge of the other partners, will not liberate an unknown, dormant partner, if they were done by the creditor during the time of his concealment. *Sheehy vs. Mandeville*, (above cited.) *Robertson vs. Wilkinson*, 3 *Price*, 538. Where two partners agreed to borrow a sum of money for the use of the firm, and one only gave his bond for it, the lender was con-

sidered a *joint* creditor of the firm, even though he knew of the existence of the firm at the time of taking the bond. *Ex-parte Brown*, cited 1 *Atk.*, 225.

The true principle established by the authorities appears to be this, that where there is a dormant partner, the ostensible partner assumes a double liability, that is, what may be called an *ostensible* and a *secret* liability, an *ostensible* liability in his *separate* capacity, and a *joint secret* liability, *jointly* with the dormant partner : for the creditor may sue the ostensible partner, *separately*, or the dormant and ostensible partner, *jointly*, he is not bound to join the dormant partner as a defendant, even after he becomes known. *Gow. on Partn.*, 217, (side.) *Story on Partnership*, 350, 351. There is, therefore, a *joint* and *separate* liability on the part of the *ostensible* partner. On the purchase of goods for the firm, he becomes *separately* liable on a *several simple contract*, and *jointly* liable with his *dormant partner* on a *joint simple contract*. By the creditor taking his single bill, his liability on the *several simple contract*, as ostensible partner, may be merged or extinguished, leaving his joint liability with his dormant partner, when discovered, in full force. Donnelly, on purchasing the goods for the price of which this suit was brought, assumed this *double* liability, viz., in his *separate* and *joint* character: he was separately liable on a *several simple contract*, as well as *jointly* liable with the appellee on a *joint simple contract*. The single bill may extinguish the *several* simple contract by merging the liability of Donnelly thereon ; but the joint simple contract on which this suit was brought, remains unimpaired.

Kelly received the benefit arising from the sale of the goods. Donnelly absconded. Justice and common honesty require Kelly to pay for them.

That the promissory notes were binding on the firm, appears to be established by well settled principles. It is well settled, that one partner may draw and endorse bills and notes to bind the firm. These notes were given in a firm transaction; and the hypothesis in the prayer is, that they were intended to bind the firm. It is only where the transaction is

63      v. 1

wholly disconnected from the firm business, and so known to be by the person taking the notes, that it will not bind.

It is also well settled, that where notes are given for goods, &c., sold, suit may be brought on the original consideration, provided the notes be surrendered, as in this case, or satisfactorily accounted for.

*McKaig* on the same side, insisted, that the articles of partnership which were in evidence, gave Donnelly power to execute single bills.

*Devickman* for appellee.

The exceptions present but two propositions:—1st. Did the single bill discharge the defendant? 2nd. Were the promissory notes binding on the firm?

As to first point. Whatever will discharge one of the partners discharges both. A sealed instrument discharges a simple contract.

*Sheely vs. Mandevill,* relied on by the other side, we are told in *Greenleaf,* overruled cases has been overruled. 18 *John. Rep.,* 481. A judgment against two ostensible partners, afterwards, two others were discovered, the first judgment was a bar to an action against the four. 13 *Mass. R.,* 148, *Ward vs. Johnson.* 11 *G. & J.,* 11, *Moale vs. Holland.* 9 *Serg. and R.,* 142, *Smith vs. Black.* 4 *J. C. R.,* 566, *Perry vs. Martin,* was a proceeding in equity upon the ground of mistake.

1 *Exch. Rep.,* 417, *(3 Price,)* is in conflict with *S. & R.,* 142, and 18 *John.,* 459, and is but the dictum of the judges.

If the single bill was only collateral security, it would not discharge the original debt, but to make the single bill merely a collateral security, it must appear in the instrument. See *Brown on Action at Law,* 328, in the 45*th Law Library.*

In 14 *John.,* 404, the higher security was the obligation of a third party.

1839, ch. 14, relates only to judgments, and not to single bills or bonds.

*Mr. D.* gave a reference to 5 *Hill,* 86. 13 *S. & R.,* 238.

13 *Mee. and Wels.*, 494. 2 *H. & J.*, 474. 1 *Peters C. C. R.*, 301, 306. 2 *John.*, 213. 11 *Ohio*, 232.

The appellant contends, that under the agreement Donnelly had a right to give bonds. If so, it must be because it is a sealed instrument; but this gives to a partner no more power to execute bonds than a parol agreement would give. As to power of partners, see 1 *Am. Lead. Cases*, 296. See also 4 *Medcalf*, 548. 11 *Pick.*, 406. That assent is necessary, although the articles of partnership a sealed instrument.

As to second point. If the single bill discharged the dormant partner, there remained no longer any claim on the firm, and the notes were given for Donnelly's individual debt. A note given by known partners for matters not within the partnership, does not bind the dormant partner. 12 *Eng. C. L.*, 59.

*McKaig* for appellant.

It is not necessary to decide the question of merger in this case. 11 *G. & J.*, 11, refers to a New York case. 4 *John. C. R.*, 566, only a question whether a court of equity has jurisdiction?

By articles of agreement, Donnelly was to buy in his own name; of course, obligations given in his name were to bind the firm.

Notes renewed the claim.

LE GRAND, C. J., delivered the opinion of the court.

This is an action of assumpsit. It appears, from the evidence, that the appellants sold a quantity of goods to one Thomas Donnelly, who was the partner of the defendant, the latter being unknown to the vendors, as being one of the house conducting business under the name and style of Thomas Donnelly. At the time of the purchase, Donnelly gave his single bill for the amount, which, not being paid at maturity, he gave to the appellants two promissory notes for the amount, signed, Thomas Donnelly. So soon as appellants discovered that Kelly was a partner of Donnelly, they issued an attachment against

their goods. Kelly appeared, a declaration was filed, and the suit regularly proceeded against him.

The prayers offered on behalf of the plaintiff, are all drawn inartificially, but we understand the first as asserting the proposition, in substance, that if the single bill was received by the appellants in ignorance of the fact, that Kelly was a secret partner, then its acceptance did not extinguish the original debt of appellants against Kelly. If this be the true construction of the prayer, then we think the county court did right in rejecting it; and if it be not, the court would still have been justified in rejecting it, on the ground that it was likely to mislead the jury.

It is too plain and familiar a principle of law, to require the citation of authorities to sustain it, that the acceptance of a security of a higher dignity, merges and extinguishes the original cause of action. It is clear, therefore, that the acceptance of a single bill of Donnelly, extinguished the original debt. Although, in the case of *Moale vs. Hollins,* 11 *Gill & Johnson,* the plaintiff became informed of the existence of a secret partner, before he obtained judgment against the ostensible one; yet the court do not seem to attach much importance to the circumstance, for they cite, as authority, the case of *Smith, et al., vs. Black, 9th Serg. & Rawle,* 142, in which it was expressly held, that the ignorance of the creditor of the existence of a dormant partner, at the time of obtaining a security of higher and greater dignity, did not affect the question of extinguishment.

We think the court erred in the rejection of the second prayer. It, in substance, affirms, that if the jury find the facts stated in it, that the acceptance of the single bill does not bar the right of the appellants to recover. We do not understand the prayer as asserting (for if we did, we would concur with the county court,) that the acceptance of the single bill did not bar the right of recovery on the *original* cause of action; that is to say, the sale and delivery of the goods; but merely as asserting, that the single bill did not constitute a bar to the recovery of the appellants in this action.

We think the appellants were entitled to recover, if the jury believed the facts, and that that recovery should have been had on the two promissory notes. Whilst there is no doubt that the giving of the single bill extinguished the claim of the plaintiffs, on the original contract, against the defendant, and, also, that in the absence of an express authority, or subsequent ratification of the act, one partner has no power to bind his co-partners by a matter under seal, it is equally clear, the giving of the single bill did not extinguish Donnelly's claim against Kelly. Had Donnelly paid the claim out of his private funds, he would, of course, have extinguished that claim against his partner, because it would have been paid and gone; but still his partner would be liable to him for his proportion of the amount; or, had Donnelly given the notes of the firm to raise the amount with which to pay the debt, could there be a doubt of the liability of Kelly on these notes? It can make no difference, whether the notes be issued before or after the debt is paid. In one case, the debt would be due to a stranger, and, in the other, to a partner; and, in either case, the active partner was authorised to issue the notes of the firm to raise the funds to pay the debt. The whole effect of the arrangement was equivalent to one partner paying, out of his own funds, a partnership debt, and the question is, whether he has not a right to indemnify himself out of the assets of the firm? Or, where he has become individually liable, whether he has not the right to use the name of the firm to raise the means to meet this liability incurred on behalf of, and for the interest of the partnership. The articles of agreement in this case, are broad enough to confer the right. Had Donnelly had the notes discounted at a bank, to enable him to take up his single bill, there could have been no doubt of the right of the bank to have recovered on the notes.

We think the court did right in rejecting the third and fourth prayers. The third prayer declares, that the single bill is no extinguishment or release of the liability of Kelly for the "said partnership debt." Understanding this prayer to refer to the debt arising out of the sale of the goods, for the reasons which

we have stated in regard to the first prayer, we think the court did right in rejecting it. The fourth prayer asserts the proposition, that the giving of the promissory notes revived the original debt. In this view we do not concur.

Holding that the court should have granted the second prayer, and that the plaintiffs were entitled to recover on the promissory notes, we reverse the judgment, and award a procedendo.

*Judgment reversed, and procedendo awarded.*